**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**VICTORIA ANN BLACK,**

      **Plaintiff,**

**v.**                                              **Case No.: 3:20-cv-00621**

**KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,**

      **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>**

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and Defendant's brief requesting judgment in her favor. (ECF Nos. 14, 15).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 14); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

No. 15); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

## I.    Procedural History

On August 8, 2017, Plaintiff Victoria Ann Black ("Claimant") protectively filed for DIB, alleging a disability onset date of January 1, 2013 due to "degenerative disc disease, osteoporosis, rheumatoid arthritis, and brain stent." (Tr. at 123, 252). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 15). Claimant subsequently filed a request for an administrative hearing, which was held on November 20, 2019 before the Honorable Melinda Wells, Administrative Law Judge (the "ALJ"). (Tr. at 30-53). Claimant amended her alleged onset date to April 11, 2017 on the date of her hearing. (Tr. at 247). On December 11, 2019, the ALJ issued a written decision, finding that Claimant was not disabled as defined in the Social Security Act. (Tr. at 12-28). The ALJ's decision became the final decision of the Commissioner on August 5, 2020 when the Appeals Council denied Claimant's request for review. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11). Thereafter, Claimant filed a Memorandum in Support of Motion for Judgment on the Pleadings, (ECF No. 14), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 15). The time period within which Claimant could file a reply to the Commissioner's brief expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    __Claimant's Background__

Claimant was 59 years old on her amended alleged disability onset date and 60 years old on her date last insured. (Tr. at 89). She completed high school, communicates in English, and previously worked as a sales attendant and cashier. (Tr. at 49, 251, 253).

## III.    __Summary of the ALJ's Decision__

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination,

the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or

managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for disability insurance benefits through December 31, 2018. (Tr. at 17, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from her amended alleged onset date through her date last insured. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and osteoarthritis of the wrists. (*Id.*, Finding No. 3). The ALJ also considered Claimant's hypertension, gastroesophageal reflux disease, resolved intestinal obstruction, brain aneurysm, left hip fracture, total hip

arthroplasty, and anxiety, but the ALJ found that the impairments were non-severe. (Tr. at 17-19). The ALJ concluded that Claimant's osteoporosis and rheumatoid arthritis were not medically determinable impairments. (Tr. at 19).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 19, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could occasionally climb ramps and stairs, stoop, and kneel; she could never climb ladders, ropes or scaffolds; she needed to avoid more than occasional exposure to extreme cold; and she could never work at unprotected heights or around moving machinery.

(Tr. at 20-22, Finding No. 5).

At the fourth step, the ALJ determined with the assistance of a vocational expert that Claimant could perform her past relevant work as a sales attendant. (Tr. at 22-23, Finding No. 6). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 23, Finding No. 7).

## IV. **Claimant's Challenges to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision. First, Claimant argues that substantial evidence does not support the ALJ's determination that her depression and anxiety were non-severe impairments. (ECF No. 14 at 5-6). Second, Claimant contends that the ALJ's decision is flawed because the ALJ did not assess any mental RFC restrictions or explain why no restrictions were warranted. (*Id.* at 6-7). In response to Claimant's challenges, the Commissioner argues that the ALJ's step two finding is supported by substantial evidence, and the ALJ was not required to include any

mental RFC limitations because the record did not demonstrate that Claimant had any mental functional limitations. (ECF No. 15 at 7-13).

## V.    <u>Relevant Medical History</u>

The undersigned has reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is summarized as follows.

### A. *Treatment Records*

On January 29, 2016, Claimant's primary care provider, Clifton Bolinger, M.D., recorded that Claimant's depression and anxiety were well controlled on Valium. (Tr. at 460, 463). However, Claimant reported to Dr. Bolinger a few months later, on April 21, 2016, that her anxiety was uncontrolled; thus, Dr. Bolinger doubled Claimant's dosage of Valium. (Tr. at 464, 467). Claimant's mood symptoms improved, and she denied depression and anxiety on May 25, 2016 and expressed euthymic mood and normal affect. (Tr. at 468, 470, 471). On June 17, 2016, Dr. Bolinger again documented that Claimant's anxiety was uncontrolled. (Tr. at 698).  In addition, Claimant's history of standardized depression screening indicated mild to moderate symptoms. (*Id*.). Claimant wanted to restart Prozac. (Tr. at 695, 698). Dr. Bolinger prescribed Prozac and Valium. (Tr. at 698).

Dr. Bolinger noted on July 19 and October 21, 2016; January 24, May 19, June 20, July 19, August 2, and October 18, 2017; and January 23, 2018 that Claimant's anxiety and depression were well controlled on Prozac and Valium. (Tr. at 628, 631, 636, 639, 641, 644, 646, 649, 656, 660, 661, 664, 690, 693, 783, 788). Claimant's Patient Health Questionnaire-9 (PHQ9) scores indicated mild depression. (Tr. at 644, 649, 787, 782). On March 5, 2018, Claimant presented to Dr. Bolinger following her recent hospitalization for a bowel obstruction. (Tr. at 803). Claimant requested Xanax because she was "very anxious with everything going on," and Xanax was more effective in treating her

7

symptoms. (*Id*.). Dr. Bolinger prescribed Xanax in place of Valium and told Claimant to continue taking her prescription for Prozac. (Tr. at 803-04). Claimant's mood symptoms improved, as she continued to take Xanax and Prozac through at least May 3, 2019. (Tr. at 1028-29, 1032-33, 1036-37, 1040-41, 1044-45, 1047-48, 1051-52, 1056-57, 1068-69).

### B. Consultative Examination and Prior Administrative Findings

On December 5, 2017, psychologist Emily Wilson, M.A., performed a consultative examination of Claimant. (Tr. at 766). Claimant reported that she suffered from anxiety for many years, but it worsened that year since she could not work. (Tr. at 767). Claimant denied symptoms of depression and reported an interest in a variety of issues. (Tr. at 768). She was personable and cooperative, interacted appropriately, exhibited a sense of humor, and displayed normal mood and affect. (Tr. at 770). However, her recent memory appeared to be below average based on the test that Ms. Wilson administered. (*Id*.). Ms. Wilson diagnosed Claimant with generalized anxiety disorder. (Tr. at 771). She considered whether Claimant had a neurocognitive disorder, but she declined to diagnose Claimant with the condition because Claimant's score on the Digit Span subtest, a measure of immediate memory and attention, during the consultative examination was 11, and Claimant scored 10 in her 2015 evaluation. (*Id*.). Ms. Wilson believed that Claimant's anxiety concerning her brain aneurysm contributed to her difficulty focusing, concentrating, and remembering things at home. (*Id*.). She opined that Claimant's prognosis was fair so long as Claimant received consistent and appropriate psychotropic, medical, and psychological intervention. (*Id*.). Ms. Wilson stated that Claimant may need assistance managing her benefits if they were awarded. (*Id*.).

On December 12, 2017, state agency psychologist Joseph A. Shaver, Ed.D., determined, based upon his review of Claimant's medical records, that Claimant suffered

from severe anxiety and obsessive-compulsive disorders. (Tr. at 96). He performed a psychiatric review technique, assessing that Claimant had a mild restriction in understanding, remembering, and applying information and interacting with others and a moderate limitation in maintaining concentration, persistence, or pace and adapting or managing herself. (Tr. at 97). Dr. Shaver concluded that Claimant had the mental RFC to perform routine and repetitive instructions and tasks that imposed minimal production quotas and few independent decision-making responsibilities. (Tr. at 102). Timothy Saar, Ph.D., affirmed Dr. Shaver's findings on April 30, 2018. (Tr. at 114, 119).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on November 20, 2019 that she could not work because her memory was "erased" during her aneurysm surgery. (Tr. at 36-37). Regarding mental impairments, she stated that she took Prozac and Xanax, but she never specifically answered the ALJ's questions regarding whether medication helped her depression, whether she had ever been hospitalized for anxiety, and whether she went to counseling. (Tr. at 39-41). Claimant's attorney noted that Claimant lost track of the ALJ's questions during her testimony. (Tr. at 46). Claimant stated that she often had difficulty answering questions and had issues with short-term memory. (Tr. at 46-47).

## VI.   <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a
> particular conclusion. It consists of more than a mere scintilla of evidence
> but may be somewhat less than a preponderance. If there is evidence to

> justify a refusal to direct a verdict were the case before a jury, then there is
> "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a

*de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v.*

*Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589

(4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed

applicable Regulations and Rulings in reaching his or her decision, and that the decision

is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence

exists, the Court must affirm the Commissioner's decision "even should the court disagree

with such decision." *Blalock*, 483 F.2d at 775.

## VII.  **Discussion**

Claimant's challenges concern the ALJ's step two finding and RFC assessment.

Each argument is discussed below, in turn.

### A. *Non-Severe Impairments*

Claimant asserts that the ALJ erred in finding that her mental impairments were

non-severe. At the second step of the sequential evaluation, the ALJ determines whether

a claimant has medically determinable impairments, and, if so, whether such

impairments are severe within the meaning of the regulation. 20 C.F.R. §

404.1520(a)(4)(ii). A medically determinable impairment "must be established by

objective medical evidence from an acceptable medical source," and the SSA "will not use

[a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the

existence of an impairment(s)." *Id.* at § 404.1521. As section DI 24501.020 of the SSA's

Program Operations Manual System (POMS) explains, "[o]bjective medical evidence

means signs, laboratory findings, or both." The term "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that are observable, apart from the claimant's statements (description of symptoms)," and the "[s]igns must be shown by medically acceptable clinical diagnostic techniques." POMS DI 24501.020. "Laboratory findings" are defined as "one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques." *Id.* Finally, "[d]iagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.*

A medically determinable impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. § 404.1522(a); SSR 96-3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (citing SSR 85-28, 1985 WL 56856). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). The impairment must also meet the 12-month duration requirement, meaning that, unless the impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. Courts often find that an error at step two is harmless when the ALJ found at least one severe impairment, proceeded with the

sequential evaluation, and considered the effect of the challenged impairment(s) at subsequent steps of the analysis. *Cook v. Colvin*, No. 2:15-CV-07181, 2016 WL 5661348, at *9 (S.D.W. Va. Sept. 29, 2016) (collecting cases).

### 1. Anxiety

The ALJ determined that Claimant's anxiety was a medically determinable impairment, but it was non-severe. (Tr. at 18-19). In making that finding, the ALJ applied the special technique to consider the four broad areas of mental functioning known as the paragraph B criteria. (*Id.*). The ALJ considered the state agency psychologists' conclusions that Claimant had mild to moderate mental functional limitations, but the ALJ was not persuaded by the experts' assessments because the ALJ found that they were inconsistent with Claimant's well-controlled anxiety and unremarkable mental examinations. (*Id.*). The ALJ discussed that Claimant's anxiety symptoms were controlled by medication prescribed by her primary care provider, and the consultative psychologist, Ms. Wilson, noted normal mental status examination findings other than Claimant's below average recent memory. (Tr. at 18). The ALJ cited that Claimant's mental status remained intact throughout the treatment records. (*Id.*).

Claimant argues that her anxiety was severe because she was "treated for," "assessed with," and "positive for" anxiety during the relevant period, and the state agency psychologists assessed that she had some moderate mental limitations and mental RFC restrictions. (ECF No. 14 at 2). However, "[a] diagnosis without accompanying symptoms causing functional loss does not suffice to establish a severe impairment." *Ferrebee v. Saul*, No. 1:19CV1139, 2021 WL 410886, at *5 (M.D.N.C. Feb. 5, 2021), *report and recommendation adopted,* 2021 WL 848194 (M.D.N.C. Mar. 5, 2021). Furthermore, the fact that Claimant was treated for anxiety does not necessarily indicate that the

impairment was severe. *Sutton v. Saul*, No. 2:20CV00008, 2021 WL 1921391, at *11 (W.D. Va. May 13, 2021). If treatment, such as medication, successfully controls a claimant's symptoms, it can indicate that the claimant does not suffer work-related limitations. *Ingram v. Astrue*, No. CIV. SKG-11-1729, 2013 WL 1175444, at *5 (D. Md. Mar. 20, 2013).

In this case, Claimant's family care physician, Dr. Bolinger, prescribed medication for Claimant's anxiety, and he noted that Claimant maintained a euthymic mood and normal affect. (Tr. at 465-66, 471, 631, 639, 644, 649, 664, 659, 787, 782). In the months preceding Claimant's alleged onset of disability, Claimant took Prozac and Valium and denied any anxiety symptoms. (Tr. at 468, 470, 656, 658, 661, 663). In May and October 2017 and January 2018, after Claimant's alleged onset date, Dr. Bolinger documented that Claimant's anxiety was well controlled by medication. (Tr. at 649, 783, 788). Her mental status examination findings during her consultative examination in December 2017 were normal other than her impaired recent memory. (Tr. at 770).

Claimant presented to Dr. Bolinger in March 2018 following hospitalization for a bowel obstruction. She requested a prescription for Xanax because she was "very anxious with everything going on," and Xanax was more effective in treating her symptoms. (Tr. at 803). She was awake, alert, and oriented; her mood and affect were appropriate; and she displayed normal judgment. (*Id.*). Dr. Bolinger prescribed Xanax in place of Valium and told Claimant to continue taking her prescription for Prozac. (Tr. at 804). Thereafter, from July 2018 through at least May 2019, which was well past Claimant's date last insured, Claimant continued taking Prozac and Xanax, and she consistently denied anxiety symptoms; her mental status examinations were normal; and Dr. Bolinger recorded that Claimant's anxiety was well controlled on current therapy. (Tr. at 1028-30, 1032-34, 1036-39, 1040-42, 1044-45, 1047-49, 1051-53, 1056-59, 1068-70).

13

Claimant contends that the ALJ discounted the opinions of the consultative and reviewing state agency psychologists, as well as her treatment records, in the step two analysis. (ECF No. 14 at 5). Indeed, the state agency psychologists, Dr. Shaver and Dr. Saar, assessed that Claimant had severe mental impairments and certain mental RFC limitations. (Tr. at 96, 97, 102, 114, 119). However, the ALJ was not required to assign any weight to those findings. The revised regulations concerning opinion evidence apply to Claimant's application because it was filed after March 27, 2017. Although Claimant asserts that her protective filing date was in January 2017, the transcript page which she cites in support of that statement does not indicate that date. (ECF No. 14 at 1). Rather, the record reflects that Claimant protectively filed for benefits on August 8, 2017. (Tr. at 123). The ALJ's decision and the Commissioner's brief list August 8, 2017 as the protective filing date, and Claimant does not challenge either assertion. (Tr. at 15); (ECF No. 15 at 3). Claimant's argument regarding the opinion evidence is unclear because she cites the former and revised regulations, although both versions cannot govern her application because they apply to disparate time periods. (ECF No. 14 at 5) (citing 20 C.F.R. §§ 404.1520b, 404.1520c, concerning applications filed on or after March 27, 2017 and 20 C.F.R. § 404.1527, concerning applications filed before March 27, 2017). The undersigned construes August 8, 2017 to be the protective filing date based on the record.

For applications filed on or after March 27, 2017, a medical opinion is defined as the following:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of

work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

By contrast, "other medical evidence" includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at § 404.1513(a)(3). The regulation specifies that a "prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review in your current claim based on their review of the evidence in your case record," such as "(i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) Your residual functional capacity; (v) Whether your impairment(s) meets the duration requirement; and (vi) How failure to follow prescribed treatment and drug addiction and alcoholism relate to your claim." *Id.* at § 404.1513(a)(5).

Significantly, under the revised regulation, an ALJ is not required to assign weight to any evidence. *Id.* at § 404.1520c. Rather, the ALJ must only evaluate the persuasiveness of the medical opinions and prior administrative findings, considering the following factors: supportability, consistency; relationship of the source to the claimant; length, purpose, and extent of treatment relationship; frequency of examinations; whether the

source examined the claimant; the source's specialization; and other factors. *Id.* at § 404.1520c(a)-(c). The primary factors for the ALJ to consider are the supportability and consistency of the opinions or findings. The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id.* at § 404.1520c(b)(2). The term "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). Furthermore, the law explains that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id.* at § 404.1520c(c)(2).

Here, the ALJ explicitly considered Ms. Wilson's consultative psychological examination findings. The ALJ was not required to assign any weight to or evaluate the persuasiveness of the consultative examination report because Ms. Wilson did not provide medical opinions or prior administrative findings. *See, e.g., Miller v. Saul*, No. 3:20-CV-00352, 2021 WL 1603613, at *17 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted,* 2021 WL 1601749 (S.D.W. Va. Apr. 23, 2021) ("With respect to Ms. Wilson's consultative examination report, the ALJ did not explicitly determine whether any opinion therein was persuasive or not, however, as noted *supra*, he was not obligated to do so pursuant to the Regulations governing this decision. Nevertheless, the ALJ did expressly consider the findings in Ms. Wilson's report [...]").

Furthermore, the ALJ properly evaluated the persuasiveness of Dr. Shaver and Dr. Saar's prior administrative findings in accordance with the regulatory framework. (Tr. at 18-19). Claimant's argument that the ALJ failed to assign weight to the prior administrative findings is without merit because the ALJ was not required to do so under 20 C.F.R. § 404.1513c. The ALJ sufficiently explained how she considered the factors of supportability and consistency to evaluate Dr. Shaver and Dr. Saar's findings. The ALJ noted that the psychologists based their conclusions on Claimant's "recent" diagnosis of generalized anxiety disorder, low average IQ score during her consultative examination, and reported difficulty focusing for extended periods. (Tr. at 19). However, the ALJ found that the limitations that the experts assessed were inconsistent with Claimant's well-controlled anxiety and normal mental examinations. (*Id.*).

Based on the above, the ALJ articulated appropriate explanation and support for her conclusion that Claimant's anxiety was non-severe. She addressed the relevant and conflicting evidence, and there is more than a scintilla of evidence to support her assessment because, *inter alia*, Claimant's physician stated that her anxiety was controlled by medication, Claimant repeatedly denied anxiety symptoms, and Claimant's mental status examination findings were almost exclusively normal. Claimant does not identify any critical conflicting evidence that the ALJ failed to consider or misapplication of the law concerning the ALJ's step two analysis of her anxiety. Therefore, the undersigned **FINDS** that the ALJ's step two conclusion that Claimant's anxiety was a non-severe impairment is supported by substantial evidence.

### 2. Depression

The ALJ did not mention Claimant's depression at step two, despite the fact that Claimant was diagnosed with depression during the relevant period and prescribed

Prozac, and the ALJ asked Claimant during her administrative hearing if medication helped her depression. (Tr. at 17-19, 39, 628, 636, 641, 646, 649, 783, 788, 804, 1037, 1041, 1045, 1048, 1057). The undersigned recognizes that much of the ALJ's step two analysis regarding Claimant's anxiety may also apply to Claimant's depression. Further, the undersigned appreciates that the medical records concerning Claimant's depression are minimal. For instance, Claimant did not allege depression when she applied for disability benefits; Dr. Bolinger recorded that Claimant's symptoms were controlled, and he eventually stopped diagnosing Claimant with depression; and Ms. Wilson did not diagnose Claimant with depression during her consultative examination. All of those factors may be relevant to the ALJ's analysis. However, the ALJ did not note any of them or anything else concerning Claimant's depression.

The record was not so one-sided or devoid of evidence for the ALJ to entirely overlook Claimant's depression in the decision. It is unclear if the ALJ found that Claimant's depression was not medically determinable; medically determinable, but non-severe; or the ALJ failed to consider the impairment entirely. Without any narrative explanation, the Court is precluded from reviewing whether the ALJ's step two finding concerning Claimant's depression is supported by substantial evidence. Furthermore, because the ALJ did not address Claimant's depression in subsequent steps of the analysis, the ALJ's error at step two cannot be considered harmless.

Therefore, the undersigned **FINDS** that the ALJ's step two analysis of Claimant's depression is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her step two finding concerning Claimant's depression.

### B. RFC Assessment

Claimant further argues that the ALJ failed to include RFC restrictions to account for her mental impairments or explain why limitations were not warranted. (ECF No. 14 at 6-7). Social Security Ruling ("SSR") 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the most that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions that the ALJ should assess include the claimant's physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" mental abilities; and other abilities, "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 CFR § 404.1545(b-d). Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional

capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4.

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. As the Fourth Circuit recently emphasized, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311 (citations omitted). Critically, the "second component, the ALJ's logical explanation, is just as important as the other two." *Id.* Indeed, Fourth Circuit "precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.*

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

In this instance, the ALJ dedicated a single sentence to Claimant's mental impairments in the RFC analysis. She noted that Claimant reported memory problems and demonstrated some issues with concentration during the hearing, but Claimant's evaluation in December 2017, just a few weeks before Claimant's date last insured, was

normal, and Claimant did not have any signs of neurocognitive disorder. (Tr. at 21). The ALJ's foregoing analysis of the evidence is unsupported by substantial evidence, as Claimant's mental status in December 2017 was not entirely normal. Claimant's recent memory was deficient during that examination. (Tr. at 770). She recalled only one of four words after a five-minute delay. (*Id*.). Furthermore, although Ms. Wilson concluded that Claimant did not have a neurocognitive disorder, she found that Claimant's anxiety affected her ability to focus and concentrate, as well as her memory. (Tr. at 771). She opined that Claimant's prognosis was fair so long as she received consistent and appropriate psychotropic, medical, and psychological intervention. (*Id*.). Ms. Wilson further stated that Claimant may need assistance managing her finances if awarded benefits. (*Id*.).

The ALJ did not reconcile any of the above evidence. She failed to explain how the fact that Claimant did not have a neurocognitive disorder was relevant to whether Claimant's anxiety or depression affected her ability to perform basic work activities. The consultative examiner submitted evidence regarding the functional effects of Claimant's anxiety, but the ALJ did not articulate any consideration of it. Rather, the ALJ swiftly dismissed Claimant's mental impairments in the RFC analysis by incorrectly concluding that Claimant's consultative examination findings were normal and providing the extraneous reasoning that Claimant did not have a neurocognitive disorder.

The ALJ did not meaningfully discuss Claimant's medically determinable impairment of anxiety or Claimant's depression in any manner in the RFC assessment. Although the ALJ found that Claimant had no limitations in the paragraph B criteria and her anxiety was non-severe, those step two findings did not eviscerate the ALJ's duty to consider all impairments, severe and non-severe, in assessing Claimant's RFC.

Furthermore, the ALJ's boilerplate statement that the RFC finding accounted for the limitations that the ALJ found in the paragraph B mental function analysis was insufficient to satisfy the ALJ's obligation to analyze Claimant's ability to do work-related activities and document her findings. *See Shank v. Saul*, No. 3:20-CV-00444, 2021 WL 2767063, at *8–9 (S.D.W. Va. June 11, 2021), *report and recommendation adopted,* 2021 WL 2744550 (S.D.W. Va. July 1, 2021). The ALJ recognized that she was required to perform a more detailed assessment of Claimant's mental RFC than simply analyzing the paragraph B criteria, but she failed to document such analysis.

For those reasons, the undersigned **FINDS** that the ALJ should reconsider or elaborate upon her assessment of Claimant's mental RFC on remand. *See, e.g., Anthony M. v. Comm'r, Soc. Sec. Admin.,* No. CV SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (remanding because, although the ALJ sufficiently explained that the claimant did not have any limitation in the paragraph B criteria, the ALJ did not discuss the claimant's mental impairments at subsequent steps of the sequential evaluation in order for the Court to discern why the ALJ concluded that no mental RFC restrictions were warranted).

## VIII.  Recommendations for Disposition

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the 8findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 14); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 15); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** September 1, 2021

Cheryl A. Eifert
United States Magistrate Judge